**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**PURVETTE BRYANT,**

**Plaintiff,**

**vs.** **Case No. 6:05-cv-1710-Orl-19UAM**

**ORLANDO SENTINEL COMMUNICATIONS CO.,**

**Defendant.**

---

# ORDER

This case comes before the Court on the following:

1. Defendant's Motion for Summary Judgment, filed by Defendant Orlando Sentinel Communications Co. ("the Sentinel") on April 2, 2007; (Doc. No. 48);

2. Appendix of Evidentiary Materials in Support of Defendant's Motion for Summary Judgment, filed by the Sentinel on April 2, 2007; (Doc. No. 49);

3. Plaintiff's [Amended] Response to Defendant's Motion for Summary Judgment, filed by Plaintiff Purvette Bryant on May 8, 2007; (Doc. No. 62);

4. Defendant's Motion to Strike Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, filed by the Sentinel on May 18, 2007; (Doc. No. 63); and

5. Plaintiff's Response to Defendant's Motion to Strike Plaintiff's Response to

Defendant's Motion for Summary Judgment, filed by Plaintiff on June 4, 2007. (Doc. No. 66).

**Background**

Plaintiff Purvette Bryant instituted the instant Title VII suit on November 14, 2005, seeking damages and attorney's fees for allegedly suffering employment discrimination on the basis of her race. (Doc. No. 1).

The following facts are not in dispute. Plaintiff is an African-American adult female. In 1993, Plaintiff was hired as a reporter in the Volusia County Bureau of the Deland office of Defendant Orlando Sentinel Communications Company ("the Sentinel"). (*Id*. at ¶ 5). At that time, Plaintiff admits she received a copy of the Sentinel's workplace harassment policy and employee guidebook. (Doc. No. 49-2, pp. 3-4). Plaintiff's initial supervisor was Bo Poertner, although between 1993 and 1999 she was supervised by Bo Poertner, Don Hudson, and Allen Bartlett, who were all at one time County Editors employed by the Sentinel. (*Id*. at pp. 5-6).

In June of 1999, Mike Lafferty became the Sentinel's Volusia County Editor and thus became Plaintiff's direct supervisor. (*E.g.*, Doc. No. 49-3, p. 41, ¶ 2). During this year, Plaintiff received an "Achieves" rating on her annual performance review, which signified that she was performing at the level expected by the Sentinel. (*E.g.*, *id*. at ¶ 4). Mr. Lafferty states that he had not had enough experience to independently judge Plaintiff's work and deferred to the opinion of Assistant County Editor Steve Moore. (*Id*.).

In early 2000, Plaintiff was assigned to cover the Volusia County government "beat." (Doc. No. 49-2, p. 10). The parties agree that around late 1999 or early 2000, the working

relationship between Mr. Lafferty and Plaintiff soured. During this year, Mr. Lafferty criticized Plaintiff for using too much judicial jargon in her stories, failing to report on newsworthy stories which were a part of her beat, failing to make the edits suggested by Mr. Lafferty on second and third drafts of articles, and factual and statistical inaccuracies in her writing. (*E.g.*, Doc. No. 49-2, pp. 12-16, 19, 22-23 37; Doc. No. 49-3, p. 42, ¶ 6; Doc. No. 49-4, pp. 9, 11, 13; Doc. No. 49-5, pp. 10-18). On July 5, 2000, Mr. Lafferty rated Plaintiff as performing "Below Standards" in her annual performance review. (Doc. No. 49-4, pp. 21-28). The review stated several examples of stories written by Plaintiff which Mr. Lafferty stated were not up to the Sentinel's standards. (*Id*.)

Plaintiff complained to the Sentinel about Mr. Lafferty's managing style. In October of 2000, Plaintiff submitted a response to her 2000 performance review, stating that she was surprised by the negative review, that her standards had not changed, and that Mr. Lafferty was hard to work with because he did not receive questions and comments well and rarely altered his initial viewpoint on a story. (Doc. No. 49-2, p. 24; Doc. No. 41-5, pp. 2-8). Furthermore, Plaintiff complained that Mr. Lafferty should have, and failed to, intervene during one instance where Sentinel employee Barry Flynn berated her at work. (*Id*.) Later, in June of 2001, Plaintiff submitted a "self-evaluation" in advance of the Sentinel's performance evaluation in which she suggested that Mr. Lafferty had a personality difference with her which affected his critique of her work. (Doc. No. 49-5, p. 31). Nowhere in Plaintiff's response or in her self-evaluation did she make any statements or complaint that she was being treated differently because of her race. (*See id.* at pp. 2-8; 30-34).

On August 30, 2001, Plaintiff met with Regional Editor Lauren Ritchie and a Human

Resources representative to complain about Mr. Lafferty's managing style and to request a transfer. (*E.g.*, Doc. No. 49-3, pp. 4, 9-11). Plaintiff stated at this meeting that Mr. Lafferty treated her differently in raising his voice at her, remarking that her writing was poor, and heavily editing her drafts. Plaintiff also stated that he singled her out during an April 18, 2001 staff meeting as someone "who should get her day started sooner." (*E.g., id.* at p. 10; Doc. No. 49-4, p. 3, ¶¶ 4, 6). Plaintiff also expressed disappointment that she was not hired for several other positions for which she had applied during the past year and blamed Mr. Lafferty for halting her career advancement. (*E.g.*, Doc. No. 49-3, pp. 4, 10; Doc. No. 49-4, p. 2, ¶ 3). Ms. Ritchie testified that at no time did Plaintiff state or suggest that she believed Mr. Lafferty's actions were based on her race, and in fact specifically stated she did not feel she was treated differently because of her race. (*E.g.*, Doc. No. 49-4, p. 3, ¶ 5). Plaintiff testified that she cannot recall the specifics of the conversation, but she recalls she did not specifically mention race. (Doc. No. 49-3, p. 5). Plaintiff also complained about Mr. Lafferty's actions to the Vice- President of Human Relations, Cathy Hertz, but did not state to Ms. Hertz that she believed she was being singled out because of her race. (*Id.* at p. 6).

Plaintiff again received a "Below Standards" performance rating for her 2000-2001 review in September of 2001. In the review, Mr. Lafferty stated that Plaintiff was not producing a sufficient quantity of articles and had demonstrated little improvement over the past year. (Doc. No. 49-5, pp. 23-28). The review provided examples of several factual and technical inaccuracies in Plaintiff's stories which were made subsequent to the 2000 performance review. (*See id*.). As a result of such review, the Sentinel informed Plaintiff that she would be placed on probation and that she was required to attend weekly meetings

with Mr. Lafferty and Ms. Ritchie. (*E.g.*, Doc. No. 49-3, pp. 8-9). Plaintiff complained because she felt the Sentinel did not take into account her self-evaluation before completing the review. (*E.g.*, Doc. No. 49-5, p. 28). Ms. Ritchie responded to Plaintiff on October 5, 2001, that Plaintiff's self-evaluation had been considered and further responded that she felt that Mr. Lafferty's review was proper based on her review of Plaintiff's work during the past year. (Doc. No. 49-4, pp. 3-4, ¶¶ 9-11).

The Sentinel's Human Resources Department also initiated an investigation based on Plaintiff's complaints regarding Mr. Lafferty. (Doc. No. 49-4, p.3, ¶ 6). In connection with the investigation, Ms. Ritchie interviewed, *inter alia*, all of the Sentinel's employees at the Volusia County Bureau. (*Id*.). After her investigation was complete, Ms. Ritchie concluded the following: (a) no one could corroborate Plaintiff's claim that Mr. Lafferty had ever yelled at or lost his temper with Plaintiff; (b) Plaintiff's claim that she was "singled out" for criticism during an April 18 staff meeting was not accurate, as Mr. Lafferty's comments were directed to the entire staff and no one individual in particular; and (c) Plaintiff's complaint that Mr. Lafferty precluded her from advancing was unfounded, as Plaintiff had never actually submitted an application for one of the positions she claimed she sought and Plaintiff was unqualified for the other positions because she "was not satisfactorily performing her job in Volusia County." (*Id*. at ¶ 8).

The Sentinel's staff continued to feel that Plaintiff's work was unsatisfactory during her probationary period. Both Mr. Lafferty and Ms. Ritchie stated that they had to counsel Plaintiff on her writing style, her willingness to take into account editing suggestions, and numerous factual inaccuracies in her work. (*E.g.*, *id*. at ¶¶ 13-14; Doc. No. 49-3, p. 43, ¶¶

9-11). Plaintiff confirmed in her deposition that she was criticized for unclear writing and inaccuracies but stated that she did not feel much of the criticized language was unclear. (*E.g*., Doc. No. 49-3, pp. 13-20).

Sentinel employees discussed Plaintiff's work performance in November of 2001. Ms. Ritchie concluded that Plaintiff regularly failed to make proposed edits, turned in articles with careless mistakes and factual inaccuracies, failed to improve her writing, was late on deadlines, missed stories which were a part of her beat, and had a negative attitude toward constructive criticism. (Doc. No. 49-4, p. 4, ¶¶ 14-15). Mr. Lafferty concluded that Plaintiff's work suffered from factual deficiencies, poor organization and structure, and routinely required significant re-writing. (Doc. No. 49-3, p. 42-43, ¶¶ 3, 10-11, 13). On November 19, 2001, Plaintiff was called to a meeting with Mr. Lafferty, Ms. Hertz, and Ms. Ritchie at which she was informed that her employment was terminated. (*E.g*., Doc. No. 49-4, p. 4, ¶ 16).

The Sentinel's employees did not make any comments regarding Plaintiff's race, and Plaintiff did not state that she believed any actions taken against her were based on her race. (*Id*. at ¶ 17; Doc. No. 49-3, pp. 21-22).

**Standard of Review**

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate only in circumstances where "the

evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." *Id.* The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether the moving party has satisfied the burden, a court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993) (citation omitted). If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then a court must not grant summary judgment. *Id.* (citation omitted).

Once a movant who does not bear the burden of proof on the pertinent claim or defense satisfies its initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact, the burden shifts to the party bearing the burden of proof on the pertinent claim or defense to come forward with specific facts showing that there is a genuine issue for trial. *Fitzpatrick v. City of Atlanta* , 2 F.3d 1112, 1115-17 (11th Cir. 1993); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-movant must demonstrate that there is a material issue of fact that precludes summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990) (citing *Anderson*, 477 U.S. 242). "[T]he

nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). All justifiable inferences are to be drawn in favor of the non-movant, and the evidence presented by the non-movant is to be believed by the court. *Tipton*, 965 F.2d at 999 (quoting *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159 (1970)). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue of material fact remaining for trial. *Matsushita*, 475 U.S. at 587 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)) (internal quotation marks omitted).

## I. Motion to Strike

The Sentinel moves to strike Plaintiff's Response in Opposition due to the fact that the evidentiary support attached to the response is not in the proper format, not properly authenticated, not based on personal knowledge, and contradicts earlier deposition testimony. (Doc. No. 63. pp. 2-5).

Contrary to the Sentinel's argument, the fact that some evidence submitted in response to a motion for summary judgment may be inadmissible does not warrant the striking of the entire response. In ruling on a motion to strike, each document submitted in support of a motion or response must be considered individually to determine if the proffered piece of evidence is incomplete, has not been properly authenticated, or contains inadmissible hearsay or conclusory statements. *E.g.*, *Lewis v. Town of Waterford*, 239 F.R.D. 57, 58 (D. Conn. 2006). Thus, the Court must apply the Federal Rules of Civil

Procedure and the Federal Rules of Evidence to determine whether such evidence would be admissible at trial and therefore whether a court can consider them in ruling on a motion for summary judgment. *E.g., Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997).

Federal Rule of Civil Procedure 56(e) describes the requirements for affidavits submitted in support of summary judgment filings. An affidavit must: (a) be based on personal knowledge; (b) set forth such facts that would be admissible in evidence; (c) show that the affiant is competent to testify to the matters stated therein; (d) be signed by the affiant; and (e) be accompanied by a certificate of acknowledgment executed in the manner provided by law by a notary public. Fed. R. Civ. P. 56(e); Fed. R. Evid. 902(8). In the case at bar, Plaintiff Purvette Bryant's affidavit is deficient in at least two respects. First, the affidavit states that Plaintiff was duly sworn before it was written, but the document includes no notarization or acknowledgment by a notary public. (*See* Doc. No. 62-5). Furthermore, the affidavit is not signed by Plaintiff. On the signature line, Plaintiff has inserted a type-written "/s/", but the document contains no signature or seal. Such deficiencies render Plaintiff's affidavit inadmissible for purposes of ruling on the Sentinel's motion for summary judgment. *See, e.g., Howard-Ahmad v. Chicago School Reform Bd. of Trustees*, 161 F.Supp.2d 857, 861 (N.D. Ill. 2001) (unsigned, unnotarized affidavit is inadmissible as evidence under Rule 56(e) and must be stricken).

The declaration of Bo Poertner is likewise inadmissible. Chapter 28, United States Code, Section 1746 specifies the requirements for declarations submitted in support of summary judgment filings. Such declarations must (a) be signed by the declarant; (b) under penalty of perjury; and (c) state that the averments in the document are true. 28 U.S.C. §

1746; *In re Muscatell*, 106 B.R. 307, 309 (M.D. Fla. 1989). In the instant case, the Declaration of Bo Poertner submitted by Plaintiff in support of her motion for summary judgment fails in all three respects. (*See* Doc. No. 62-3). Thus, Mr. Poertner's declaration will not be considered by the Court.

Finally, the evidentiary materials submitted in response to the Sentinel's motion for summary judgment, such as past articles written by Plaintiff, yearly evaluations of Plaintiff by Bo Poertner and Allen Bartlett, and Plaintiff's self-evaluation, may be considered by the Court even though they have not been properly authenticated by Plaintiff. However, portions of such exhibits which cannot clearly be reduced to admissible form at trial must not be considered by the Court.

As a general rule, the Court may consider any material submitted at the summary judgment stage which would be admissible or usable at trial. *Property Mgmt. & Inv., Inc. v. Lewis*, 752 F.2d 599, 604, n. 4 (11th Cir. 1985). Authenticity and completeness are among the evidentiary requirements of Rule 56. *Id*.; *Woods v. City of Chicago*, 234 F.3d 979, 987-88 (7th Cir. 2000). Specifically, for a document to be considered in support of or in opposition to a motion for summary judgment, it must be authenticated by an affidavit (or declaration) that meets the requirements of Rule 56. *E.g., Williams v. Eckerd Family Youth Alternative*, 908 F.Supp. 908, 911 (M.D. Fla. 1995). Additionally, the affiant or declarant must be the person through whom the exhibits could be admitted into evidence; otherwise, such exhibits and other similar papers should be admitted in accordance with the Federal Rules of Evidence. *Id*. Thus, documents must be properly authenticated to be considered at summary judgment unless no objection is made or it is apparent that they can be reduced

to admissible, authenticated form at trial. *E.g., U.S. Aviation Underwriters, Inc. v. Yellow Freight Sys., Inc.*, 296 F.Supp.2d 1322, 1334 (S.D. Ala. 2003).

In the case at bar, although none of the items offered into evidence by Plaintiff has been properly authenticated by affidavit or declaration, certain items can clearly be reduced to admissible, authenticated form at trial. First, the past articles written by Plaintiff would be admissible at trial under Rule 902(6). Secondly, the past evaluations of Plaintiff appear to be offered as business records under Rule 902(11), although Plaintiff has not offered predicate facts for their admission as such. Despite this, the Court in its discretion finds that such forms can also be reduced to admissible form at trial. Plaintiff's self-evaluation can also be reduced to admissible form at trial, and furthermore it was also placed into evidence by the Sentinel as part of its Motion for Summary Judgment. (Doc. No. 49-5, pp. 30-34).

However, the Court will not consider various unauthenticated, handwritten comments on the articles and evaluations which cannot clearly be reduced to admissible form at trial. Plaintiff submits "unclean" copies of some of her past articles and evaluations with handwriting in the margins, purportedly by Sentinel editors and staff. (*See, e.g.*, Doc. No. 62-1, pp. 1-2; Doc. No. 62-6, p. 1; Doc. No. 62-23, pp. 1-2). Such handwritten comments have not been authenticated, are subject to objections on the grounds of hearsay and relevance, and lack the proper indicia of reliability for the Court to conclude at this time that they can be reduced to admissible form at trial. *E.g., Denney v. City of Albany*, 247 F.3d 1172, 1189 n. 10 (11th Cir. 2001). Hence, such comments will not be considered by the Court at this time.

## II. Motion for Summary Judgment

Plaintiff raises two discrete employment discrimination claims. First, Plaintiff argues that she was denied promotion and ultimately terminated on the basis of her race. (Doc. No. 1, ¶ 12). Secondly, Plaintiff claims that she was retaliated against when the Sentinel terminated her employment after she complained about differential treatment. (Doc. No. 1, ¶ 19). Plaintiff does not raise any claims on the basis of her gender. (*See generally id.*). For the reasons that follow, the Court finds that summary judgment must be granted in favor of Defendant.

### A. Race Discrimination/Failure to Promote

Summary judgment must be granted on Plaintiff's race discrimination claim. A plaintiff with no direct evidence of discrimination establishes a *prima facie* case of race discrimination in violation of Title VII by showing that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified for the job or position at issue; and (4) her employer treated similarly situated employees outside her class more favorably. *See, e.g., Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997). Once a *prima facie* case is shown, the defendant must set forth sufficient, admissible evidence demonstrating a non-discriminatory reason for the adverse employment action. If the defendant does so, the presumption raised by the *prima facie* case is rebutted, and the factual inquiry proceeds to a new level of specificity, where the plaintiff has the opportunity to demonstrate that the proffered reason was not the true reason for the adverse action. *See, e.g., Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 843 (11th Cir. 2000). The plaintiff succeeds either directly by persuading the court that a discriminatory reason more than likely

motivated the employment action or indirectly by showing that the employer's proffered explanation is unworthy of credence. *Id*. (citing *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 255-56, (1981)).

The Sentinel argues that summary judgment must be granted because Plaintiff fails to demonstrate that she was qualified for any of the promotions for which she applied and furthermore because Plaintiff fails to demonstrate that the Sentinel treated similarly situated employees differently. The Sentinel points out that Plaintiff has presented no evidence of her qualifications or of dissimilar treatment of other Sentinel employees. It further argues that Plaintiff has failed to identify or present evidence of any similarly situated employee in the company.

Defendant having successfully demonstrated the absence of a genuine issue of material fact for trial, the burden shifts to Plaintiff to come forward with specific facts showing that such a genuine issue of fact exists. *Fitzpatrick*, 2 F.3d at 1115-17. Plaintiff has failed to do so.

Summary judgment must be granted because Plaintiff has failed to present any evidence of any individuals who were similarly situated to her and were treated more favorably by the Sentinel. Plaintiff's response to Defendant's motion does not attempt to contest Defendant's argument that there is no evidence in the record of any similarly situated employee; it merely argues with regard to the failure to promote claim that Plaintiff was a competent reporter and the evidence shows that Plaintiff's firing was "pretextual." (Doc. No. 62-2, pp. 4-5).

In her deposition, Plaintiff was asked to identify other employees of the Sentinel who

were outside of the protected class, similarly situated to her, and promoted before her. (Doc. No. 49-3, p. 28). Plaintiff identified only three potential individuals by name – Lori Horvitz, Anthony Carlossi, and "maybe" Maria Padilla. (*See id*. at pp. 28, 33, 35). She testified, however, that she was unaware or unsure of the employment history and qualifications of these employees and that she merely "felt" she was more experienced and qualified than they were. (*Id*. at pp. 28, 31-33, 35). Plaintiff also stated that she was unsure if these individuals were promoted or merely transferred to the positions she sought, and was unsure if they received a raise for changing positions. (*Id.* at p. 29-30). Plaintiff submits no additional admissible evidence regarding these individuals. Thus, there is no evidence in the record of the Sentinel treating any similarly situated individuals more favorably than Plaintiff, and Plaintiff has failed to present any evidence or argument demonstrating the existence of a genuine issue of material fact on this element of her *prima facie* case. For these reasons, summary judgment must be granted in favor of the Sentinel on Plaintiff's race discrimination claim.

Even if an issue of fact existed on this element of Plaintiff's claim, summary judgment would still be warranted, as Plaintiff has presented no evidence that she was qualified for and applied for a position that the employer was seeking to fill. *See Vessels v. Atlanta Independent School Sys.*, 408 F.3d 763, 768-69 (11th Cir. 2005) (describing such as necessary element of prevailing on failure to promote race discrimination claim). It its Motion for Summary Judgment, the Sentinel has demonstrated that Plaintiff has presented no evidence that she was qualified for any of the positions she sought, and furthermore that Plaintiff did not meet the objective qualifications of the positions she sought, as employees

who have been rated "Below Standards" on their most recent evaluation are not eligible for a promotion. (*See, e.g.*, Doc. No. 49-6) (stating Plaintiff could not be "a contender" for a promotion due to her poor performance and below standards evaluation). As Plaintiff also bears the burden of proof on this issue,[1] Plaintiff must now come forward with specific facts showing that a genuine issue of fact exists with respect to this element. *Fitzpatrick* 2 F.3d at 1115-17. Plaintiff has also failed to present evidence or argument demonstrating a genuine issue of material fact on this element of her claim, again arguing only that the Sentinel's stated actions were pretextual.

For these reasons, the Court grants Defendant's motion for summary judgment on this issue.

**B. Retaliation**

A plaintiff establishes a prima facie case of retaliation by demonstrating that: (1) she engaged in a statutorily protected expression; (2) an adverse employment action was taken against her; and (3) a causal link exists between the protected expression and the adverse action. *Hairston*, 9 F.3d at 919. Once the plaintiff has established a prima facie case of retaliation, "the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action." *Id*. If the defendant proffers legitimate reasons, the presumption of retaliation is rebutted and drops from the case. At the summary judgment stage, the burden then shifts back to the plaintiff to raise a genuine factual issue as to whether the defendant's proffered reason is a pretextual ruse to mask a retaliatory action. *See id.* ("The burden to avoid summary judgment is not to show

---

[1] *See Vessels*, 408 F.3d at 768.

by a preponderance of the evidence that the stated reasons were pretext. Rather, plaintiff's burden ... is met by introducing evidence that ... could allow a jury to find ... that the plaintiff has established pretext, and that the action was taken in retaliation for engaging in the protected activity.").

In this case, the Sentinel does not dispute the second element of a prima facie case for retaliation, that is that Plaintiff's termination amounts to an "adverse employment action." The Sentinel instead argues that Plaintiff cannot establish that she engaged in statutorily protected expression or a causal link between the protected expression and the adverse action. After examining the admissible evidence of record, the Court finds that no genuine issue of material fact exists and thus that the Sentinel is entitled to summary judgment as a matter of law.

No reasonable jury could find that Plaintiff engaged in statutorily protected expression in the case at bar. In the context of a retaliation claim, expression is not protected if the employee does not clearly allege discrimination based on a protected class, such as race. In fact, even allegations of unfair treatment, absent a complaint based on race, sex, or national origin, do not amount to statutorily protected activity. *See Coutu v. Martin Co. Bd. of Co. Comm.*, 47 F.3d 1068, 1074 (11th Cir. 1995). "At a minimum, an employee must communicate to her employer her belief that discrimination was occurring. It is not enough to simply complain in a racially neutral way about an employer's practices [...]." *Wehunt v. R.W. Page Corp.*, 352 F.Supp.2d 1342, 1358 (M.D. Ga. 2004); *see also Douglas v. Lowe's Home Centers, Inc.*, No. 6:04cv1768-Orl-19KRS, 2006 WL 709547, at *10 (M.D. Fla. Mar. 17, 2006).

In the instant case, Sentinel employee Lauren Ritchie states that although Plaintiff did complain about Mr. Lafferty's managing style and allegedly rude behavior, she never complained that she felt she was being singled out on account of her race, and on at least one instance specifically denied that she felt such behavior was racially motivated. (*E.g.*, Doc. No. 49-4, p. 3). Plaintiff testified in her deposition that she could not recall ever mentioning her belief that her treatment was based on race to Mr. Lafferty or Ms. Ritchie. (*E.g.* Doc. No. 49-3, pp. 3-6). Plaintiff specifically remembers that she never discussed race with Cathy Hertz, Vice -President of Human Resources. (Doc. No. 49-3, p. 39). Plaintiff's response to her performance review and her self-evaluation likewise do not mention that the treatment she complained of was related to her race. (Doc. No. 49-5, pp. 2-8, 30-34).

In fact, the admissible evidence of record demonstrates that Plaintiff only mentioned an issue indirectly relating her race to Sentinel employees on one occasion, and on that occasion she did not state that she felt she was being treated differently on account of her race. Plaintiff testified that some time around 1998, before Mr. Lafferty became her supervisor, Sentinel employee Barry Flynn made an allegedly inappropriate comment based on blacks and the Ku Klux Klan. (Doc. No. 49-3, p. 23). Plaintiff could not recall the comment made by Mr. Flynn, but remembers it was "derogatory." (*Id*.) Plaintiff never complained to the Sentinel about such comment, and Mr. Flynn apologized afterwards. (*Id*. at pp. 23-24).

In her response to her "Below Standards" review in 2000, Plaintiff stated that Mr. Flynn, who worked with Plaintiff for a week as an assistant editor in 2000, accused her of not forgiving him for comments he made about the Ku Klux Klan and about Jesus Christ.

(Doc. No. 49-5, p. 7). However, Plaintiff did not claim that she felt Mr. Lafferty's behavior or critiques of her work, or even Mr. Flynn's behavior towards her or his suggested edits, were based on her race. (*See id.*). In fact, Plaintiff stated that this was merely evidence that Mr. Flynn was not interested in coaching Plaintiff on writing because he did not like her. (*Id.*). Plaintiff also testified in her deposition that she felt the majority of Mr. Flynn's criticisms of her were based on personal preference and subjective opinion regarding her writing style. (Doc. No. 49-2, p. 21). Thus, Plaintiff's comments do not amount to statutorily protected expression. *See, e.g., Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1350 (11th Cir. 1999) (statutorily protected conduct limited to employee opposing unlawful employment practice or making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing).

Construing all facts in the light most favorable to Plaintiff, no genuine issue of material fact exists with regard to this element of Plaintiff's claim, and Defendant is entitled to judgment as a matter of law. For these reasons, the Court grants the Sentinel's Motion for Summary Judgment.

## Conclusion

Based on the foregoing, the Defendant's Motion to Strike Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, filed by Defendant Orlando Sentinel Communications Co. on May 18, 2007, (Doc. No. 63), is **GRANTED in part and DENIED in part**. Defendant's Motion for Summary Judgment, filed by the Sentinel on April 2, 2007, (Doc. No. 48), is **GRANTED**. The Clerk shall close this case.

**DONE and ORDERED** in Chambers in Orlando, Florida this 19th day of June, 2007.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record